# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

NORMA MORRIS,

    Plaintiff,

v.                                                                CIV 18-0164 KBM

ANDREW M. SAUL[1],
Commissioner of Social
Security Administration,

    Defendant.

# **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and/or Remand (*Doc. 25*), filed November 27, 2018. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 9, 18, 19.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be granted.

**I.    Procedural History**

On June 25, 2014, Ms. Norma Morris ("Plaintiff") filed an application with the Social Security Administration for a period of disability and disability insurance benefits under Title II of the Social Security Act (SSA). Administrative Record[2] (AR) at 62, 132-38. Plaintiff initially alleged a disability onset date of April 1, 2010, but later amended

---

[1] Andrew Saul was confirmed as Commissioner of Social Security on June 17, 2019 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] Document 15-1 contains the sealed Administrative Record. *See Doc. 15-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

that date to November 6, 2014. AR at 33, 132. Plaintiff's date last insured was December 31, 2014. AR at 17. Thus, the relevant period for purposes of her disability determination was November 6, 2014, to December 31, 2014. Disability Determination Services ("DDS") determined that Plaintiff was not disabled both initially (AR at 70) and on reconsideration (AR at 82). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of her applications. AR at 128.

Both Plaintiff and a vocational expert ("VE") testified during the *de novo* hearing before the ALJ. *See* AR at 28-60. ALJ Doug Gabbard, II issued an unfavorable decision on April 13, 2017. AR at 15-23. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 7-8), which the Council denied on January 17, 2018 (AR at 1-3). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II. Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity ("RFC"), she is unable to perform her past relevant work. 20 C.F.R § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" Plaintiff retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process, ALJ Gabbard found that Plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2014." AR at 17. He also determined that she "did not engage in substantial gainful activity during the period from her [initial] alleged onset date of April 1, 2010 through her date last insured of December 31, 2014." AR at 17 (citing 20 C.F.R. § 404.1571-1576). At Step Two, the ALJ concluded that Plaintiff had the following severe impairments: obesity, degenerative disc disease of lumbar spine, carpal tunnel syndrome of right hand, and degenerative joint disease of bilateral knee. AR at 17 (citing 20 C.F.R. § 404.1520(c)). The ALJ indicated that Plaintiff had the following non-severe impairments: foot callous, left hand

3

carpal tunnel syndrome, migraines, and hypertension. AR at 18. Finally, the ALJ noted Plaintiff's allegations of sinusitis, joint dysfunction, chronic pain, lump in neck, and dizziness but determined that there was "insufficient evidence to establish medically determinable impairments" as to those allegations. AR at 17-18.

At Step Three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 18 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). At Step Four, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." AR at 21. The ALJ considered the evidence of record and found as follows:

> [T]hrough the date last insured, [Plaintiff] had the [RFC] to perform light work as defined in 20 [C.F.R.] 404.1567(b) except with occasional climbing of ramps/stairs; no climbing of ladders/ropes/scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; no walking on uneven surfaces; occasional grasping, fingering and feeling with her right dominant hand; and she must be allowed to alternately sit and stand every 10 minutes throughout the workday for the purpose of changing positions, but without leaving the workstation.

AR at 19. The ALJ went on to find that Plaintiff "was unable to perform any past relevant work." AR at 21 (citing 20 C.F.R. § 404.1565). But at Step Five, he found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], [she] had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy." AR at 22 (citing 20

4

C.F.R. §§ 404.1569, 404.1569(a), 404.1568(d)). More particularly, the ALJ found Plaintiff able to perform the positions of Conveyor line baker worker (DOT #524.687.022) and Counter clerk (DOT #249.366.010). Consequently, he determined that Plaintiff had not been under a disability from April 1, 2010, Plaintiff's initial alleged onset date, through December 31, 2014, her date last insured. AR at 23 (citing 20 C.F.R. § 404.1520(g)).

## III.  Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial

5

evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV. Discussion

Plaintiff raises four issues in her motion. She argues that the ALJ failed: (1) to consider the opinions of her two treating physician assistants without explanation; (2) to explain his finding that her knee condition and obesity did not meet or equal Listing 1.02; (3) to explain how her obesity affected her functioning at Step Four; and (4) to conduct a function-by-function assessment of her exertional limitations. *Doc. 25* at 2.

### A. The ALJ committed reversible error by failing to discuss the opinions of Ms. Burks and Ms. Sheffler.

Plaintiff argues that because the ALJ made no mention of the opinions of Pamela Burks, P.A. and Han Vu Sheffler, P.A., remand is warranted. *Doc. 25* at 15. While the Commissioner concedes that it "may have been preferable for the ALJ to have explicitly addressed the opinions of Ms. Sheffler and Ms. Burks," he insists that the ALJ did not commit reversible error. *Doc. 26* at 18.

Plaintiff first saw Ms. Burks in November 2014, within the relevant period, for severe pain in her right knee, which Plaintiff rated as a "10." AR at 298. She reported to Ms. Burks that her right knee pain had been ongoing since 2009 and denied any recent trauma or injury. AR at 298-99. Plaintiff reported that she experienced knee pain when standing and walking and that she also experienced "give way" of the same knee. AR at 299. Ms. Burks reported that Plaintiff had "some pain over the lateral aspect and just inferior to the knee" as well as "pain with straight leg raise both in the sitting and supine

6

position." AR at 299. However, she observed no swelling, erythema, ecchymosis, or joint effusion. AR at 299. Ms. Burks noted that x-rays taken of Plaintiff's right knee earlier that month showed "moderate osteoarthritis of all 3 compartments." AR at 299. Additionally, x-rays of her lumbar spine showed "early degenerative joint and disk disease at L4-5 and L5-S1," and Ms. Burks assessed "[l]ow back pain and right leg radicular symptoms." AR at 299. Ms. Burks administered a Kenalog injection in Plaintiff's knee at this November 2014 visit. AR at 300.

Plaintiff saw Ms. Burks again in early December 2014, also within the relevant period, when she requested another injection in her knee. AR at 297. At that time, Plaintiff reported that the previous knee injection had not alleviated her pain and that, earlier that month, her knee "locked out," with several hours passing before she could resume bending her knee. AR at 297. Ms. Burks found tenderness over Plaintiff's medial joint line and posterior medial joint line. AR at 297. She also noted weakness in Plaintiff's right hamstring and quad. AR at 297. She assessed "[r]ight knee pain with probable meniscal injury" and referred Plaintiff for an MRI. AR at 298.

In February 2015, just after Plaintiff's date last insured, Plaintiff saw Ms. Burks for a follow-up appointment. AR at 292. She reported that her "right knee [had] been locking" and that she was having back pain as well as pain in her left knee. AR at 292. According to Ms. Burks' treatment notes, an MRI showed "moderate to advanced osteoarthritis with asymmetric joint space narrowing most pronounced in the anterior lateral aspect of the joint." AR at 292. Additionally, there were "large osteophytes seen and associated with cystic changes [and] several loose bodies intraarticularly, largest ones adjacent to the tibial spines." AR at 292-93. There was "architectural distortion

involving the ACL and MCL and a diffuse surface tear of the lateral meniscus anterior horn and body junction." AR at 293. The MRI also showed "advanced maceration, degeneration and tearing of the lateral meniscus," and, finally, the patellafemoral joint showed "advanced denudation of the articular cartilage over the crescent adjacent to the facets indicative of a grade IV chondromalacia patella and small effusion and findings that can be seen with synovitis as manifested by hypertrophy of the synovium." AR at 293. Ms. Burks assessed Plaintiff with "[m]oderate to severe osteoarthritis of the right knee." AR at 293. Additionally, she noted that x-rays of Plaintiff's lumbar spine showed "grade I spondylolisthesis of L4 and L5 with moderate narrowing of the L4-5 interspace." AR at 293.

In his decision, the ALJ related certain of these MRI findings from Ms. Burks' February 2015 treatment notes without attributing them to Ms. Burks. *See* AR at 20. He noted, for instance, that Plaintiff was diagnosed with "moderate to advanced osteoarthritis" and that there were "large osteophytes seen and associated with cystic changes." AR at 209. He did not, however, mention Ms. Burks' August 31, 2016 letter, which she wrote on Plaintiff's behalf, or the opinions expressed therein.

In her August 31, 2016 letter, Ms. Burks stated that she had seen Plaintiff for "low back pain with bilateral leg pain and substantial weakness for the last 6 years." *Id.* She explained that the results of Plaintiff's recent lumbar MRI showed Grade I spondylolisthesis at L4-5, opining that this condition "makes it difficult for [Plaintiff] to stand or sit or walk for any period of time." *Id.* Finally, she stated that Plaintiff's severe pain "makes it difficult to do her ADL's as well as any physical activity or to work." *Id.* Apart from his brief mention of the February 2015 MRI findings, the ALJ did not discuss

8

any of Plaintiff's visits with Ms. Burks, any of her findings during the relevant period, or any of her opinions. In fact, the ALJ never mentioned Ms. Burks by name.

Likewise, the ALJ failed to mention Ms. Sheffler or her opinions. As the Commissioner notes, Plaintiff did not see Ms. Sheffler during the relevant period, seeing her for the first time in April and June of 2016, for chronic pain. AR at 361-67, 418-20. And Ms. Sheffler did not include any physical examination findings in her treatment notes for these visits. AR at 361-67, 418-20. Her treatment notes merely indicated that Plaintiff received injections of Kenalog and Toradol and that an "arthritis profile 2" was performed. AR at 361, 419. Like Ms. Burks, Ms. Sheffler wrote a letter on Plaintiff's behalf, hers dated July 8, 2016. AR at 400. Ms. Sheffler explained therein that Plaintiff "is in excruciating pain on a daily basis" and offered her opinion that Plaintiff "would not be able to perform any work duties." AR at 400. Ms. Sheffler further indicated that Plaintiff was, at that time, being treated and attending regular follow-up appointments for "severe migraines, . . . lost [sic] of strength, flexibility, and usage in her arms, hands, fingers, wrists, knees, legs, feet, shoulders, hips, and back." AR at 400.

Following her July 8, 2016 letter, Plaintiff saw Ms. Sheffler again, this time on September 27, 2016, for joint pain, headaches, dizziness, and nausea. AR at 427-31. Ms. Sheffler assessed Plaintiff with arthralgia (i.e., joint pain) and myalgia (i.e., muscle pain). AR at 428. She recorded in her treatment notes that Plaintiff's joint pain was a "chronic problem," that the medication she was taking was not helping, and that "[t]he pain is all over and . . . hurts with any movement." AR at 427. Next, Plaintiff followed up again with Ms. Sheffler on October 26, 2016. AR at 430. Ms. Sheffler assessed Plaintiff with fibromyalgia and indicated that she would attempt to obtain a prior authorization for

9

Cymbalta and that if Plaintiff was "denied again," she would prescribe an alternate medication. AR at 431.

According to Plaintiff, the ALJ's failure to explain the weight, if any, that he gave to the opinions of Ms. Burks and Ms. Sheffler constitutes reversible error. *Doc. 25* at 13-15. Plaintiff insists that the limitations opined by Ms. Burks and Ms. Sheffler exceed those contained within the ALJ's RFC and were, thus, not accounted for by the RFC. *Doc. 25* at 15. The Commissioner responds first by noting that Ms. Burks and Ms. Sheffler were not "acceptable medical sources" under the regulations in effect at the time of the ALJ's decision. *Doc. 26* at 16.

As physician assistants, it is true that, pursuant to the applicable version of 20 C.F.R. § 1513(a),[3] Ms. Burks and Ms. Sheffler were not "acceptable medical sources." At the time of Plaintiff's application, "acceptable medical sources" included physicians, psychologists, certain optometrists and podiatrists, and certain speech-language pathologists. 20 C.F.R. § 1513(a). Physician assistants, along with nurse practitioners, naturopaths, chiropractors, audiologists, and therapists, in contrast, were categorized as "other medical sources." *See Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. §§ 404.1502, 404.1513). The applicable regulations required

---

[3] Because Plaintiff filed her initial claims for Social Security benefits before March 27, 2017, the pre-2017 regulations apply here. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5855-01 (2017) (explaining the difference in treatment of medical sources between claims filed before March 27, 2017, and those filed on or after March 27, 2017). Where the pre-2017 regulation makes a distinction between "acceptable" medical sources and "other" medical sources, the post-2017 regulations remove this distinction. *Compare* 20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017") *with* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017").

certain distinctions to be made between "acceptable medical sources" and those providers that were not "acceptable medical sources." *See* SSR 06-03p, 2006 WL 2329939 at *2 (Aug. 9, 2006). These distinctions were "necessary" because only "acceptable medical sources" could "establish the existence of a medically determinable impairment," give "medical opinions" and be considered "treating sources . . . whose medical opinions may be entitled to controlling weight." *Id.* (citations omitted). While information from "other sources" could not "establish the existence of a medically determinable impairment[,] . . . information from such 'other sources' [could] be based on special knowledge of the individual and [could] provide insight into the severity of the impairment(s) and how it affect[ed] the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at *2; *see also Carpenter v. Astrue*, 537 F.3d 1264, 1267-68 (10th Cir. 2008) (explaining that while "other source[s]" cannot diagnose an impairment, their opinions are relevant to "the questions of severity and functionality") (citing *Frantz*, 509 F.3d at 1301-02). As such, opinions from "other medical sources," even at the time of Plaintiff's application, were "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939*,* at *3.

Social Security Ruling 06-03p, since rescinded but still in effect when Plaintiff filed her application, clarified that the factors used in weighing medical opinions of acceptable medical sources "set out in 20 C.F.R. § 404.1527(d) appl[ied] equally to 'all opinions from medical sources who are not acceptable medical sources as well as from other [non-medical] sources.'" *Frantz*, 509 F.3d at 1302 (quoting SSR 06-03p, 2006 WL 2329939 at *4). These factors include: (1) the examining relationship; (2) the treatment

11

relationship; (3) supportability of the opinion; (4) consistency of the medical opinion with the record as a whole; (5) specialization; and, (6) any "other factors" "which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(1)-(6). That said, "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. § 404.1527(f)(1). Indeed, depending on the facts of the case, an opinion from a medical source that is not "acceptable" under the regulations could sometimes outweigh one offered by an "acceptable" medical source. 20 C.F.R. § 404.1527(f)(1); SSR 06-03p, 2006 WL 2329939 at *5. Adjudicators were instructed to "explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2); SSR 06-03p, 2006 WL 2329939 at *6-7

Here, the Court begins with the premise that the ALJ must evaluate every medical opinion in the record, including those offered by sources who are not considered "acceptable medical sources." Critically, the ALJ offered no explanation for his failure to discuss the opinions of Ms. Burks and Ms. Sheffler and, instead, simply glossed over them without remark. The status of the providers as "other" medical sources does not justify his failure to weigh or discuss their opinions.

The Commissioner suggests that this failure is justified on other grounds, however. He maintains that neither Ms. Burks nor Ms. Sheffler's opinions "had an effect on the outcome of the case because both opinions were written over a year and a half

12

after Plaintiff's date last insured and involved consideration of new impairments." *Doc. 26* at 16-17. But the issuance of a medical opinion after the date last insured does not necessarily render it irrelevant to an ALJ's disability determination. In fact, medical opinions authored after the date last insured *do* sometimes bear on the nature and severity of a claimant's condition within the relevant period. *See, e.g., Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (holding that the ALJ erred by neglecting to discuss an RFC evaluation authored by a treating source *after* the claimant's date last insured, where the evaluation covered the relevant period); *Baca v. Dep't of Health & Human Servs.,* 5 F.3d 476, 479 (10th Cir.1993) (reasoning that evidence that bears upon a plaintiff's condition after his date last insured is "pertinent evidence" which may "disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date").

     Here, the ALJ himself recognized that post-date-last-insured evidence is sometimes relevant to disability decisions. That is, he mentioned findings from an MRI taken outside the relevant period. AR at 20. Noting that "it was not until almost two months after the [date last insured] that a MRI [of Plaintiff's right knee] was performed," the ALJ nevertheless concluded that Plaintiff "had an impairment related to her knees prior to the [date last insured]." AR at 20. Unfortunately, the ALJ did not go on to discuss the *opinions* of Plaintiff's treating physician assistants, even as they related to her right knee impairment.

The Commissioner asks the Court to excuse the ALJ's failure to discuss Ms. Sheffler's opinion by emphasizing that Plaintiff did not even see her until April 2016, well after her date last insured. The Court agrees with the general notion that visits with a medical provider that take place beyond the relevant period are typically less probative than those within the relevant period. Still, the timing of Ms. Sheffler's opinion did not preclude its relevance. The relevance of Ms. Sheffler's opinions and her treatment notes was for the ALJ to determine in the first instance. As for Ms. Burks' opinions, the Court notes that they are more likely probative of Plaintiff's disability, given their temporal proximity to the relevant period. Ms. Burks treated Plaintiff on at least two occasions during the relevant period and on one occasion shortly thereafter. *See* AR at 293.

Ultimately, the Court cannot agree with the Commissioner that the opinions of either Ms. Burks or Ms. Sheffler necessarily have "no effect on the outcome of the case," simply because they were authored more than a year and a half after Plaintiff's date last insured. *See Harris v. Astrue*, 646 F. Supp. 2d 979, 999-1000 (N.D. Ill. 2009) (concluding that the ALJ erred by failing to analyze or address the opinions of the claimant's treating physician, even though the physician became the claimant's primary care physician two months after the claimant's date last insured and presented no evidence suggesting that her findings were illustrative of the claimant's prior condition).

Next, the Commissioner submits that it was proper for the ALJ to omit any discussion of Ms. Sheffler's opinions, because she "did not include specific limitations on Plaintiff's functioning, but instead simply concluded that [she] could not work." *Doc. 26* at 17. He characterizes such an opinion as one "reserved for the Commissioner." *Id.* Ms. Burks, too, opined that it would be "difficult" for Plaintiff to work. AR at 402.

An opinion by a medical source that a claimant is "unable to work" *is* an opinion on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1) (effective through March 27, 2017). Such a statement by a medical source "does not mean that [the ALJ] will determine that [the claimant is] disabled." *Id.* Nevertheless, such opinions may not be altogether disregarded. SSR 96-5p, 1996 WL 374183, at *1-2, 5 (July 2, 1996) (explaining that "adjudicators must always carefully consider medical source opinions about any issue, include opinions about issues that are reserved to the Commissioner"). Social Security Ruling 96-5p, which was effective at the time Plaintiff filed her application, is quite clear: "[t]he adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *Id.* at *3. Thus, if the opinions of Ms. Burks and Ms. Sheffler would have any bearing on a determination or decision of disability, even their opinions as to whether Plaintiff was capable of working, the ALJ was required to evaluate them. There is no indication in his decision that the ALJ did so here.

The Commissioner also notes that Ms. Burks and Ms. Sheffler's opinions reference *new* impairments, impairments not present prior to her date last insured. *Doc. 26* at 17. Among these purportedly new impairments are the following: migraines and problems with her arms, hands, fingers, wrists, feet, and shoulders. *Id.* The incorporation of new post-date-last-insured impairments may or may not be an adequate justification for an ALJ to discount a medical opinion, depending on the circumstances of a given case. In some cases, for example, courts have determined that the inclusion of post-date-last-insured impairments within an assessment was not a legitimate reason for

15

discounting a provider's opinion. *See e.g., Miocic v. Astrue*, 890 F. Supp. 2d 1046, 1056 (N.D. Ill. 2012) (concluding that the ALJ failed to give good reasons for rejecting the opinions of the claimant's treating physician and concluding that the physician's "findings very likely refer[] to claimant's condition before her insured status expired," even though the physician offered opinions and findings after the date last insured and considered limitations that began after the date last insured). Again, the ALJ here did not actually offer the inclusion of post-date-last-insured impairments as a justification for his rejection of Ms. Burks and Ms. Sheffler's opinions. The Court rejects the Commissioner's attempt to supply this post hoc justification on the ALJ's behalf.

In *Case v. Astrue*, No. 09–2058–KHV/GBC, 2009 WL 5210844 (D. Kan. Dec. 23, 2009), the District of Kansas addressed arguments similar to those advanced by Plaintiff and the Commissioner in this case, and the Court finds the District of Kansas' conclusion and rationale in in that case persuasive. There, the plaintiff argued that the ALJ erred by not considering the opinion of her nurse practitioner. That opinion was formulated two and one-half years after the plaintiff's date last insured and relied heavily upon an impairment that was not diagnosed until more than a year after the plaintiff's date last insured. *Id.* at *2. The Commissioner acknowledged that the ALJ's decision did not mention the nurse practitioner's opinion but maintained that "the decision in context makes clear that the ALJ found [the] opinion was not relevant to the determination of [the] plaintiff's condition before [the] plaintiff's date last insured." *Id.* at *2.

Admitting that there was "surface appeal" to the Commissioner's position, the District of Kansas ultimately reasoned that, even if the nurse practitioner's opinion was "based heavily" upon the diagnosis of a post-date-last-insured impairment, it was,

conversely, not based *exclusively* upon that impairment. *Id.* at *2-3. Accordingly, the court characterized the nurse practitioner's opinion as "some medical evidence of limitations which were the result of [impairments] . . . which might have limited plaintiff's abilities before her date last insured." *Id.* at *3. Even though the court noted that the nurse practitioner was not an "acceptable medical source," it determined that the ALJ was still required to explain the weight accorded to her opinion or otherwise ensure that the reviewing court could follow his reasoning. *Id.* at *3. Finding that the opinion was "at least potentially relevant to the period before plaintiff's date last insured," the court determined that the ALJ's failure to explain his dismissal of the opinion constituted reversible error. *Id.* at *3.

Here, too, Ms. Burks and Ms. Sheffler, two medical sources who were not "acceptable medical sources" at the time of Plaintiff's application, mentioned both pre-date-last-insured impairments and post-date-last-insured impairments in their opinions. Following the rationale in *Case*, the Court concludes that these opinions are at least potentially relevant to the period before Plaintiff's date last insured. While the Commissioner's arguments may ultimately constitute grounds to discount, or even reject, these opinions, the ALJ here did not explicitly discount or reject them in his decision. He did not even discuss them. The Court is constrained to evaluate the ALJ's decision based solely upon the rationale provided in his decision.

Finally, the Court does not agree with the Commissioner that the ALJ's RFC accounted for the limitations found by Ms. Burks and Ms. Sheffler. Again, Ms. Burks opined that it would be "difficult for [Plaintiff] to stand or sit or walk *for any period of time*" and that Plaintiff's limitations would "make[] it difficult to do her ADL's as well as

17

any physical activity or to work." AR at 402 (emphasis added). Ms. Sheffler, in turn, opined that Plaintiff "would not be able to perform any work duties." AR at 401. The ALJ's RFC, in contrast, permitted light work with certain limitations, including the ability to "alternately sit and stand every 10 minutes throughout the workday for the purpose of changing positions, but without leaving the workstation." AR at 19. The ALJ's RFC is at odds with and less restrictive than the opinions of Ms. Burks and Ms. Sheffler.

Ultimately, because the ALJ failed to explain the weight accorded to the opinions of Ms. Burks and Ms. Sheffler and neglected to provide sufficient rationale for the Court to determine how these opinions were treated, remand is necessary. On remand, the ALJ need not necessarily accord substantial weight to these opinions or even find that they relate to the relevant period. Rather, he must properly evaluate them and explain the weight given to them, supporting his rationale with substantial evidence in the record as a whole. The Court will grant Plaintiff's motion on this issue.

### B. Remaining Claims

The Court declines to address Plaintiff's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### V. Conclusion

In sum, the Court concludes that the ALJ committed reversible error by failing to discuss the opinions of Ms. Burks and Ms. Sheffler. Plaintiff's motion is granted on this ground.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and/or Remand (*Doc. 25*), filed November 27, 2018, is **GRANTED**. A final order pursuant to Rule 58 of the Federal Rules of Civil Procedure will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent