# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

NORMA MORRIS,

    Plaintiff,

v.                                                                              CIV 18-0164 KBM

ANDREW M. SAUL,[1]
Commissioner of Social
Security Administration,

    Defendant.

# ORDER AWARDING ATTORNEY FEES UNDER EAJA

THIS MATTER is before the Court on Plaintiff's Motion for Attorney Fees and Costs Pursuant to the Equal Access to Justice Act ("EAJA"), with Supporting Memorandum (*Doc. 31*), filed on September 6, 2019. The Commissioner opposes an award of EAJA fees and argues that his position opposing Plaintiff's Motion to Remand was substantially justified. *Doc. 34* at 1. Additionally, he maintains that the fees and costs requested by Plaintiff herein are unreasonable. *Id.* at 7-11. Having reviewed the motion and exhibits, briefs submitted by the parties, and the relevant law, the Court finds that an award of fees in the amount of $7,539.10 is reasonable in this case.

**I. The Court will grant Plaintiff's Motion in part, because the Agency's position was not substantially justified.**

In her Motion to Remand, Plaintiff sought remand of the Commissioner's denial of her application for social security benefits, arguing that the ALJ failed: (1) to consider

---

[1] Andrew Saul was confirmed as Commissioner of Social Security on June 17, 2019, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

the opinions of her two treating physician assistants without explanation; (2) to explain his finding that her knee condition and obesity did not meet or equal Listing 1.02; (3) to explain how her obesity affected her functioning at Step Four; and (4) to conduct a function-by-function assessment of her exertional limitations. *Doc. 25* at 2. The Court found in Plaintiff's favor on her first claim of error (i.e. that the ALJ failed to properly consider the opinions of her treating physician assistants) and declined to address her remaining claims, noting that they may be affected by the ALJ's treatment of the case on remand. *Doc. 29* at 18.

Plaintiff now seeks attorney fees pursuant to EAJA. "Under EAJA, a fee award is required if: (1) plaintiff is a 'prevailing party'; (2) the position of the United States was not 'substantially justified'; and (3) there are no special circumstances that make an award of fees unjust." *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting 28 U.S.C. § 241(d)(1)(A)). The parties here disagree on the second factor: whether the position of the Commissioner was "substantially justified."

"The test for substantial justification in this circuit is one of reasonableness in law and fact." *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir 1995) (citing *Gutierrez v. Sullivan*, 953 F.2d 579, 585 (10th Cir. 1992)). The Commissioner bears the burden to establish that her position was substantially justified, both on appeal to the district court and during the underlying administrative proceedings. *Hackett*, 475 F.3d at 1172; *see also Tomlinson v. Colvin*, No. Civ. 15-699 STE, 2016 WL 5316740, at *1 (W.D. Okla. Sept. 22, 2016). "Therefore, fees should generally be awarded where the agency's underlying action was unreasonable even if the government advanced a reasonable

2

litigation position." *Tomlinson*, 2016 WL 5316740, at *1 (quoting *Hackett*, 475 F.3d at 1174).

The parties and the Court agree that the ALJ here neglected to address the opinions of Ms. Sheffler and Ms. Burks, Plaintiff's treating physician assistants, in his decision. Indeed, the Commissioner conceded that it would have been "preferable for the ALJ to have explicitly addressed" these opinions. *Doc. 26* at 18. Nevertheless, in response to Plaintiff's Motion to Remand, the Commissioner asserted that the ALJ had not thereby committed reversible error. *Id*.

Because Plaintiff applied only for disability insurance benefits, she was required to establish disability within a small window of time, between November 6, 2014, and December 31, 2014. *Doc. 29* at 2. The Commissioner insisted that neither Ms. Sheffler's nor Ms. Burks' opinion "had an effect on the outcome of the case," as both opinions were written more than a year and half after Plaintiff's date last insured. *Id*. at 16-17. The Court disagreed.

Under Tenth Circuit law, opinions authored after the date last insured *do* sometimes bear on the nature and severity of a claimant's condition within the relevant period. *See, e.g.*, *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (holding that the ALJ erred by neglecting to discuss an RFC evaluation authored by a treating source *after* the claimant's date last insured, where the evaluation covered the relevant period); *Baca v. Dep't of Health & Human Servs.,* 5 F.3d 476, 479 (10th Cir.1993) (reasoning that evidence that bears upon a plaintiff's condition after his date last insured is "pertinent evidence" which may "disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments

3

which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date"). Even the Commissioner explained that "[o]pinions issued after the date last insured can be probative at times." *Doc. 34* at 6 (citing *Hamlin*, 365 F.3d 1217).

Here, Ms. Burks' opinion was drafted well after the relevant period for purposes of Plaintiff's disability benefits. Nevertheless, the Court found that opinion to be at least potentially relevant, noting that Ms. Burks treated Plaintiff on at least two occasions during the relevant period and on one occasion shortly thereafter. *Doc. 29* at 14 (citing Administrative Record[2] ("AR") at 293). While the Court concluded that the lateness of Ms. Sheffler's opinion did not necessarily preclude its relevance to the ALJ's disability determination, it described Ms. Burks' opinion as more likely to be probative. *Doc. 29* at 14. As such, the Court will focus its inquiry here on the Commissioner's position with respect to Ms. Burks' likely-more-probative opinion. If the Commissioner is unable to show substantial justification with respect to Ms. Burks' opinion, it becomes unnecessary to examine his position as to Ms. Sheffler's opinion. For the finding of no substantial justification on one issue on which remand was required entitles Plaintiff to EAJA fees. *See Urias v. Berryhill*, No. Civ. 16-1063 KBM, 2017 WL 4480834, at *3 (D.N.M. Oct. 5, 2017); *see also Comm'r, INS v. Jean*, 496 U.S. 154, 161-62 (1990) (reasoning that "EAJA . . . favors treating a case as an inclusive whole, rather than as atomized line items"); *Hackett*, 475 F.3d at 1173 n.1 (rejecting the notion that EAJA fees can be denied because the government prevailed on a majority of issues).

---

[2] Document 15-1 comprises the sealed Administrative Record in this case. *See Doc. 15-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

4

An ALJ is tasked with evaluating every medical opinion of record and explaining why any opinions were rejected. *See Martinez v. Astrue*, 422 F. App'x 719, 724-25 (10th Cir. 2011); *Wilson v. Colvin*, 541 F. App'x 869, 871 (10th Cir. 2013). Here, Ms. Burks opined that it would be "difficult for [Plaintiff] to stand or sit for *any period of time*" and that Plaintiff's limitations would "make[] it difficult to do her ADL's as well as any physical activity or to work." AR at 402 (emphasis added). In contrast, the ALJ's RFC permitted light work with certain limitations, including the requirement that Plaintiff be permitted to alternate between sitting and standing every 10 minutes without leaving the workstation. AR at 19. Clearly, the ALJ's RFC was at odds with and less restrictive than Ms. Burks' opinion.

Because Ms. Burks treated Plaintiff for right knee pain within the relevant period, her opinion, albeit written after Plaintiff's date last insured, was relevant to Plaintiff's limitations during the relevant time period. *See Hamlin*, 365 F.3d at 1217. Notably, Ms. Burks' treatment records show more than a passing reference to problems with Plaintiff's right knee.

Plaintiff first saw Ms. Burks in November 2014, within the relevant period, for severe pain in her right knee, which Plaintiff rated as a "10." AR at 298. She reported to Ms. Burks that the right knee pain had been ongoing since 2009. AR at 298-99. Plaintiff described knee pain when standing and walking as well as occasions when her knee would "give way." AR at 299. Ms. Burks referenced an x-ray and MRI of Plaintiff's right knee, which indicated moderate osteoarthritis in all three compartments. AR at 299. She saw Plaintiff again in December 2014, also within the relevant period, when Plaintiff requested another injection in her knee. AR at 297. At that time, Plaintiff reported that

5

the previous knee injection had not alleviated her pain and that, earlier that month, her knee "locked out," with several hours passing before she could resume bending her knee. AR at 297. Ms. Burks found tenderness over Plaintiff's medial joint line and posterior medial joint line. AR at 297. She assessed "[r]ight knee pain with probable meniscal injury" and referred Plaintiff for an MRI. AR at 298. Finally, in February 2015, just after Plaintiff's date last insured, Plaintiff reported to Ms. Burks that her right knee was "locking." AR at 292. According to Ms. Burks' treatment notes, an MRI showed "moderate to advanced osteoarthritis with asymmetric join space narrowing most pronounced in the anterior lateral aspect of the joint." AR at 292. Additionally, there were "large osteophytes seen and associated with cystic changes [and] several loose bodies intraarticularly, largest ones adjacent to the tibial spines." AR at 292-93. There was "architectural distortion involving the ACL and MCL and a diffuse surface tear of the lateral meniscus anterior horn and body junction." AR at 293. The MRI showed "advanced maceration, degeneration and tearing of the lateral meniscus," and, finally, the patellafemoral joint showed "advanced denudation of the articular cartilage over the crescent adjacent to the facets indicative of a grade IV chondromalacia patella and small effusion and findings that can be seen with synovitis as manifested by hypertrophy of the synovium." AR at 293. Ms. Burks assessed Plaintiff with "[m]oderate to severe osteoarthritis of the right knee." AR at 293.

As the Court explained in its July 8, 2019 Memorandum Opinion and Order, the record contains evidence that Plaintiff suffered from ongoing right knee pain since 2009, and Ms. Burks' opinion and treatment notes suggest that knee pathology was present prior to Plaintiff's date last insured. Yet, the ALJ failed to discuss any of Plaintiff's visits

6

with Ms. Burks, any of her findings during the relevant period, or any of her opinions. In fact, he never mentioned Ms. Burks by name. As the Court previously found, it was reversible error for the ALJ not to at least explain why he dismissed Ms. Burk's opinion. And reviewing the Commissioner's litigation position anew, the Court finds that he lacks substantial justification for the arguments advanced with respect to Ms. Burk's opinion. The Court is not persuaded by the Commissioner's attempt to justify the ALJ's omissions based upon the "strength of the record." The ALJ effectively dismissed the opinions of Ms. Burks and, critically, his opinion did not permit the Court to follow his reasoning for doing so.

Finally, the Commissioner argues that because Ms. Burks included new, post-date-last-insured impairments in her opinion, her opinion should have been dismissed by the ALJ. But this justification for the ALJ's rejection of Ms. Burks' opinions is equally unreasonable. While the incorporation of post-date-last-insured impairments may sometimes be an adequate justification for an ALJ to discount a medical opinion, here, the ALJ offered no such justification for his rejection of Ms. Burks' opinion. The Court rejected this *post hoc* justification by the Commissioner in its July 8, 2019 Memorandum Opinion and Order, (*Doc. 29* at 16), and it cannot now find these arguments substantially justified.

Ultimately, the Court concludes that the agency's underlying action was unreasonable and that the Commissioner has not met his burden to show that the arguments advanced in justification of it were substantially justified. Accordingly, Plaintiff is entitled to an award of fees under EAJA.

## II. The Court will reduce Plaintiff's attorney fee award and will not award postage costs or gross receipts tax.

In the alternative, the Commissioner argues that even if the Court finds an attorney fee award merited under EAJA, it should reduce the fees requested by Plaintiff as unreasonable. *Doc. 34* at 7-13. In her Motion for EAJA fees, Plaintiff requested $5,829.00 for 29 hours of work at the rate of $201.00 per hour. *Doc. 31* at 3. She submitted a billing invoice to justify this request. *Doc. 31*, Ex. 2. Thereafter, in her Reply, Plaintiff explained that counsel expended 12.5 hours of *additional* work on the present motion, resulting in a request for *additional* attorney fees and bringing the total requested fees up to $8,379.00. *See Doc. 35*, Ex. 2.

An award of attorney fees under EAJA must be reasonable, 28 U.S.C. § 2412(d)(2)(A), and the Court has an independent duty to review the fee request to determine its reasonableness, *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jean*, 496 U.S. at 161. The applicant, here Plaintiff, bears the burden of establishing entitlement to an attorney fee award, documenting the appropriate hours expended and showing that the hours spent were reasonable. *See Hensley*, 461 U.S. at 433. Ultimately, determining the reasonableness of the number of hours billed lies within the Court's discretion. *Jean*, 496 U.S. at 161.

Courts within the Tenth Circuit have noted that "20 to 40 hours of attorney time is typically expended to prosecute a social security appeal through to judgment on the merits in federal court." *Halencak v. Berryhill*, No. Civ. 17-0395 STE, 2018 WL 33354886, at *2 (W.D. Okla. July 9, 2019); *see also Rodriguez*, 2017 WL 3278944, at *2-3 (D.N.M. Aug. 1, 2017). Here, Plaintiff's request – for compensation for 29 hours of work from appeal to judgment on the merits – falls in the middle of this range.

Nevertheless, the Commissioner insists that "the facts of this case support an award of fees at the *bottom end* of this range." *Doc. 34* at 8 (emphasis added).

The Commissioner notes that Plaintiff's counsel apparently used billing entries in half-hour or hour increments. *Doc. 34* at 8. Yet, the "acceptable general practice" is "to accrue expended time in a given controversy in one-tenths of an hour (6 minute) increments." *Jones v. Colvin*, Civ. No. 13-0683 GBW, 2014 WL 12782791, at *2 (D.N.M. Dec. 10, 2014) (quoting *Reed v. Rhodes*, 934 F. Supp. 1492, 1507 (N.D. Ohio 1996), *aff'd*, 179 F.3d 453 (6th Cir. 1999)). As such, the Commissioner argues that counsel's billing is suggestive of either improper half-hour billing increments or "inaccurate timekeeping practices." *Doc. 34* at 9. He also notes that the bulk of Plaintiff's counsel's work on this case occurred on only two days, with counsel billing 8 hours the first day and 12.5 hours the second day. *Id.* The Commissioner requests that the Court exercise its discretion to "reduce any award by at least nine hours ($1,818), given Plaintiff's counsel's questionable billing practices in relation to increments billed and total hours billed daily, and in light of the fact that this case involved a short transcript and no novel arguments on appeal*." Id.* at 11. Likewise, the Commissioner submits that an attorney fee award of no more than $4,040 for 20 hours of work would be reasonable in this case. *Id.*

Having reviewed the briefing, Plaintiff's counsel's billing invoice, the record, and the applicable law, the Court finds that, while the fees requested are in line within the range the Court would expect in this case, the fees requested should nevertheless be reduced. In his Reply, Mr. Decker does not address the incremental billing used in the original request for EAJA fees for the underlying appeal, but notably sets forth one-tenth

9

hour (six minute) billing in his additional request for fees associated with briefing on the appropriate EAJA fees to be awarded. The Court agrees with the Commissioner that using half-hour and hour increments in his billing puts Plaintiff's counsel at risk of requesting compensation for hours not reasonable expended. *See Jones v. Colvin*, No. Civ. 13-0683 GBW, 2014 WL 12782791 (D.N.M. Dec. 10, 2014) (concluding that "counsel should have billed in smaller [than 12-minute] increments in order to improve accuracy and avoid unreasonable billing"). A reduction in the originally requested fees will account for Plaintiff's counsel's use of imprecise billing increments.

     For the reasons stated, the Court will exercise its discretion to implement an across-the-board reduction of 20% on the requested amount of fees associated with the underlying appeal. Because Plaintiff's counsel used the more traditional and precise billing increments for calculating reasonable fees specifically associated in bringing the instant fee motion, the full amount requested in the Reply for those services will be awarded. With the above reduction, the requested $5,829.00 minus 20% ($4,663.20) plus the reasonable fees in bringing in the instant fee motion ($2,550.00) brings the total award of EAJA attorney fees to $7,213.20. *See e.g., Neil v. Comm'r of Soc. Sec.*, 495 F. App'x 845, at *2 (9th Cir. 2012) (affirming the district court's deduction, under EAJA, of 10% from hours expended to account for block billing and the use of quarter-hour billing increments); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 825 F. Supp. 2d 226, 230-31 (D.D.C. 2011) (billing in half-hourly increments inappropriate); and *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 948-49 (9th Cir. 2007) (district court acted within its discretion to reduce requested time by 20% to account for use of quarter-hour increments).

Plaintiff also includes within her EAJA fee request components that are not recoverable under the EAJA. For instance, Plaintiff seeks postage fees in the amount of $2.00. *Weakley v. Bowen*, 803 F.2d 575, 580 (10th Cir. 1986) ("Costs for . . . postage fees are not authorized [under EAJA]."). Similarly, Plaintiff requested recovery of gross receipts taxes must be denied given that they are not available under the EAJA. *Osborn v. Berryhill*, CIV 15-1069 KBM at Doc. 32 (although not properly included in an EAJA award, gross receipts tax may be later recovered from client pursuant to a retainer agreement); *see also Williams v. Astrue*, CIV 10-0295 LAM, 2011 WL 13284607 at *2 (D.N.M. 2011) (EAJA does not provide for an award of gross receipts taxes).

Wherefore.

**IT IS HEREBY ORDERED** that attorney fees and costs be, and hereby are, awarded under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), payable to Plaintiff in the amount of **$7,213.20.** *See Astrue v. Ratliff*, 13 U.S. 2521 (2010) (EAJA fees are paid to the prevailing party, not the attorney).

**IT IS FURTHER ORDERED** that, if Plaintiff's counsel receives attorney fees under both the EAJA and 42 U.S.C. § 406(b) of the Social Security Act, Plaintiff's counsel shall refund the smaller award to Plaintiff pursuant to *Weakly*, 803 F.2d at 580.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent